1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10

11   RODRIGO JOVANE,                    )   NO. CV 05-05739-MAN
                                        )
12                  Plaintiff,          )
          v.                            )   MEMORANDUM OPINION AND ORDER
13                                      )
                                        )
14   MICHAEL J. ASTRUE,                 )
     Commissioner of the               )
15   Social Security Administration,    )
                                        )
16                  Defendant.          )
     _____)

17

18        Plaintiff filed a Complaint on August 17, 2005, seeking review of

19   the denial by the Social Security Commissioner ("Commissioner")[1] of

20   Plaintiff's claims for Supplemental Security Income benefits ("SSI") and

21   Disability Insurance Benefits ("DIB").  On January 20, 2006, the parties

22   consented to proceed before the undersigned United States Magistrate

23   Judge, pursuant to 28 U.S.C. § 636.  The parties filed a Joint

24

25   _____

26        [1]   Michael J. Astrue became the Commissioner of the Social
     Security Administration on February 12, 2007.  Pursuant to Rule 25(d)(1)
27   of the Federal Rules of Civil Procedure, Michael Astrue should be
     substituted in place of Commissioner Joanne B. Barnhart as the Defendant
28   in this action.  No further action need be taken to continue this suit
     by reason of the last sentence of Section 205(g) of the Social Security
     Act, 42 U.S.C. § 405(g).

Stipulation on May 24, 2006, in which: Plaintiff seeks an order reversing the Commissioner's decision and either awarding benefits or remanding the case for further appropriate proceedings; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed concurrent applications for SSI and DIB in 2002 and 2003. (Administrative Record ("A.R.") 62-64, 224-27.) Plaintiff claims to have been disabled since July 5, 2002, due to high blood pressure, ringing in the ears, headaches, memory loss, and left shoulder pain. (A.R. 94, 101, 224, 252-54.) Plaintiff has past relevant work experience as a semi-truck driver. (A.R. 33, 69, 95.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. (A.R. 29, 48-52, 228-32, 234-39.) On April 21, 2004, Plaintiff, who was represented by counsel, appeared at a hearing before Administrative Law Judge Eric V. Benham ("ALJ"). (A.R. 247-72.) On September 16, 2004, the ALJ denied Plaintiff's claims. (A.R. 30-39.) On July 1, 2005, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (A.R. 5-7.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his decision, the ALJ found that Plaintiff had not engaged in

2

substantial gainful activity since the alleged onset date. (A.R. 38.)
The ALJ determined that Plaintiff had the following "severe"
impairments: hypertension; a history of pain in his right wrist, right
knee, and lower back; a mood disorder secondary to generalized medical
condition; a personality disorder, not otherwise specified; and a
depressive disorder, not otherwise specified. (*Id.*) The ALJ further
determined that Plaintiff's impairments did not meet or equal one of the
listed impairments in Appendix 1, Subpart P, Regulation No. 4. (*Id.*)

    The ALJ found that Plaintiff's complaints of disabling pain
generally were not fully credible. (A.R. 36-37, 39.) With respect to
Plaintiff's residual functional capacity, the ALJ further found that
Plaintiff: could perform medium exertional work, but he was limited to
occasional stooping and crouching; has moderate difficulty performing
detailed work; and has moderate difficulty maintaining attention and
concentration for extended periods of time. (A.R. 39.)

    The ALJ concluded that Plaintiff is an "individual closely
approaching retirement age," has a "high school education," and has no
transferable skills, within the meaning of 20 C.F.R. §§ 404.1563,
404.1564, 404.1568, 416.963, 416.964, and 416.968 .[2] (A.R. 39.) Based
on his residual functional capacity finding, the ALJ determined that
Plaintiff could not perform his past relevant work. (*Id.*) Using Rule
203.27 of the Medical-Vocational Guidelines (the "Grids") as a framework
and relying on the testimony of a vocational expert, the ALJ found that,

_____

    [2]    Plaintiff was born on October 18, 1940, and was 63 years old
at the time of the hearing decision. (A.R. 33, 62, 224.)

3

1  although Plaintiff could not perform the full range of medium work, he

2  could perform work such as a hand packer, sandwich maker, and hospital

3  cleaner.[3]  (A.R. 38-39.)  Accordingly, the ALJ found that Plaintiff was

4  not "disabled" within the meaning of the Social Security Act.  (A.R.

5  39.)

6

7                        **STANDARD OF REVIEW**

8

9      This Court reviews the Commissioner's decision to determine

10  whether it is free from legal error and supported by substantial

11  evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The

12  Commissioner's decision must stand if it is supported by substantial

13  evidence and applies the appropriate legal standards.  Saelee v. Chater,

14  94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a

15  mere scintilla but less than a preponderance - it is such relevant

16  evidence that a reasonable mind might accept as adequate to support the

17  conclusion."  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

18

19      Although this Court cannot substitute its discretion for that of

20  the Commissioner, this Court nonetheless must review the record as a

21  whole, "weighing both the evidence that supports and the evidence that

22  detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec'y of

23

24          [3]     The vocational expert, David Reinhart ("VE"), testified that
25  a hypothetical individual with Plaintiff's age, education, vocational
    background, and residual functional capacity could not perform
26  Plaintiff's past relevant work.  (A.R. 261-62.)  However, the VE opined
    that this individual could perform other work such as a hand packer,
27  sandwich maker, or hospital cleaner.  (A.R. 262-63.)

28                                    4

1  Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones
2  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible
3  for determining credibility, resolving conflicts in medical testimony,
4  and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039
5  (9th Cir. 1995).  This Court must uphold the Commissioner's decision if
6  it is supported by substantial evidence and free from legal error, even
7  when   the   record   reasonably   supports   more   than   one   rational
8  interpretation of the evidence.  *Id.* at 1039-40; *see also* Morgan v.
9  Comm'r. of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999);
10  Flaten v. Sec'y. of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir.
11  1995).

12

13                          **DISCUSSION**

14

15      Plaintiff alleges two issues.  First, Plaintiff contends that the
16  ALJ should have re-contacted Plaintiff's treating physicians to obtain
17  an assessment of his residual functional capacity ("RFC") instead of
18  relying on the opinions of a consultative examiner and a state-agency
19  reviewing physician, and by not doing so, he failed to fully and fairly
20  develop the record.  Second, Plaintiff contends that the ALJ improperly
21  discounted Plaintiff's subjective pain allegations.

22

23      **A.   The ALJ Failed To Fully And Fairly Develop The Record.**

24

25      The ALJ in a social security case has an independent duty to fully
26  and fairly develop the record and to ensure that the claimant's
27  interests are considered, even when the claimant is represented, as in
28
                              5

1  this case.  <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001);
2  <u>Crane v. Shalala</u>, 76 F.3d 251, 255 (9th Cir. 1996).  However, "[a]n
3  ALJ's duty to develop the record further is triggered only when there is
4  ambiguous evidence or when the record is inadequate to allow for proper
5  evaluation of the evidence."  <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60
6  (9th Cir. 2001).

7

8      Dr. Jagvinder Singh, an internal medicine consultative examiner,
9  evaluated Plaintiff on June 12, 2003.  (A.R. 137-45.)  He noted
10 Plaintiff's complaints of high blood pressure and pain in his right
11 wrist, right knee, and lower back.  (A.R. 137.)  Dr. Singh observed that
12 Plaintiff's blood pressure was 144/86 and his pulse was 60 beats per
13 minute.  (A.R. 138.)  A musculoskeletal examination of Plaintiff's back
14 revealed:  no paravertebral spasm, tension, or tenderness; no loss of
15 lordosis; and no scoliosis, kyphosis, or kyphoscolosis.  (A.R. 139.)  In
16 addition, the range of motion (*i.e.*, flexion, extension, and lateral
17 flexion) of Plaintiff's dorsolumbar spine was within normal limits, and
18 straight leg raising was negative in the seated and supine positions,
19 bilaterally.  (*Id.*)  Dr. Singh also noted that, although Plaintiff gave
20 a history of strokes in the past, no neurological deficit was present.
21 (A.R. 140-41.)

22

23     Dr. Singh ordered that diagnostic tests, including EKGs and x-rays,
24 be conducted.  (A.R. 143-45.)  The EKGs revealed abnormal left axis
25 deviation, left anterior fascicular block, abnormality in anterolateral
26 leads, non-specific ST depression, and nonspecific T abnormality.  (A.R.
27 143-44.)  The x-rays of Plaintiff's lumbar spine showed moderate
28

degenerative disease at L4-5 and severe degenerative disease at L5-S1. (A.R. 145.) Dr. Singh's opinion, however, does not mention or discuss the results from the EKGs or x-rays in determining Plaintiff's functional limitations. Instead, Dr. Singh noted that: while Plaintiff gave a history of lower back pain, "there [were] no physical findings or limitations at this time"; and although Plaintiff does have hypertension, it is "well controlled with medication," and there are "not complications secondary to hypertension." (A.R. 141.) Dr. Singh opined that Plaintiff: could lift and carry 50 pounds occasionally and 25 pounds frequently; could stand and walk for about 6 hours in an 8-hour workday; could sit for an unlimited time period; had no postural or manipulative restrictions; and should avoid working at extremes of temperature and at heights. (*Id.*)

On June 26, 2003, a state agency physician[4] reviewed Dr. Singh's findings but, unlike Dr. Singh, expressly noted the EKG and x-ray test results. (A.R. 151-60.) The state agency physician opined consistently with Dr. Singh's opinion as to Plaintiff's RFC, but with the additional limitation of only occasional stooping and crouching. (A.R. 152-53.)

Relying on the assessment of the state agency physician, the ALJ found that Plaintiff had the physical RFC to perform medium exertional work, but he was limited to occasional stooping and crouching. (A.R. 36, 39.) Moreover, the ALJ noted:

---

[4]    The name of the state agency physician is illegible. (A.R. 159.)

7

No other doctor has found [Plaintiff] more limited.   The
evidence shows that there are no significant neurological
deficits.   X-rays of the lumbar spine showed moderate
degenerative disease at L4-L5 and severe degenerative disease
at L5-S1 (Exhibit 6F, page 9), but Dr. Singh found a full
range of motion in all joints, negative straight leg raising,
no paravertebral tenderness or spasm and no neurological
deficits (Exhibit 6F).   There is no objective pathology of the
right wrist, right knee or shoulders.   There is no evidence of
end organ damage. . . .   Thus, the above assessment is
consistent with the objective findings.

(A.R. 36.)


Plaintiff contends that the above-noted x-ray and EKG results
required finding a more restrictive RFC, namely, that he be limited to
no more than light work.   Plaintiff correctly notes that Dr. Singh did
not acknowledge, much less address, these test results.   Plaintiff
reasons, therefore, that Dr. Singh's opinion is not supported by
independent clinical findings and does not constitute substantial
evidence.   Plaintiff further argues that, because the state agency
reviewing physician relied on Dr. Singh's defective opinion, the state
agency physician's opinion likewise is not supported by objective
findings and does not constitute substantial evidence.   Plaintiff argues
that, at the very least, the ALJ should have re-contacted Plaintiff's
treating physicians in order to obtain an RFC assessment.   (*Id.*)

1   "The RFC assessment considers only functional limitations and
2   restrictions that result from an individual's medically determinable
3   impairment or combination of impairments, including the impact of any
4   related symptoms." Social Security Ruling 96-8p. The Commissioner must
5   assess a claimant's RFC "based on all of the relevant medical and other
6   evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). This duty
7   includes arranging for a consultative examination, if necessary, and
8   making reasonable efforts to assist a claimant in obtaining medical
9   reports from treating physicians. *Id.*

11   Here, in making his RFC determination, Dr. Singh determined that
12   "there [were] no physical findings or limitations" concerning
13   Plaintiff's lower back pain, yet the objective medical evidence based on
14   tests he ordered (x-rays) showed moderate degenerative disease at L4-5
15   and severe degenerative disease at L5-S1. (A.R. 141, 145.) In
16   addition, Dr. Singh's opinion, including his RFC assessment, fails to
17   acknowledge the EKG results, including the various abnormalities
18   reflected on the EKG. Dr. Singh, thus, failed to assess properly the
19   clinical findings based on the diagnostic tests that he ordered, if he
20   considered them at all.[5]

22   The state agency physician, on the other hand, did note the x-ray

---

[5]   Dr. Singh's report is dated June 12, 2003. The EKGs and x-ray
were performed that same day, but the radiologist's report was not
transcribed until one week later. Although Defendant argues that Dr.
Singh "presumably" reviewed the EKG test results and found them
"insignificant," the Court is not persuaded that this was the case,
especially given the delayed receipt of the x-ray findings. In any
event, Defendant's after-the-fact "presumption" cannot constitute the
requisite substantial evidence.

and EKG findings, along with the negative findings of Dr. Singh's musculoskeletal and neurological examinations. (A.R. 152-53, 159.) In fact, the Consultative Request form highlighted these findings and specifically raised the issue of whether Dr. Singh's opinion was accurate in light of the x-ray findings.[6] (A.R. 159.) Nonetheless, the state agency physician essentially adopted Dr. Singh's RFC assessment, adding only a postural limitation of occasional stooping and crawling, apparently based on the x-ray results. (A.R. 152-53.)

Although the state agency physician, unlike Dr. Singh, did note the June 2003 x-rays and EKGs, the Court concludes that the ALJ's reliance on the state agency physician's RFC assessment constituted error. The state agency physician's opinion did not constitute substantial evidence, because the state agency physician did not possess all of the relevant and medical evidence of record pertinent to assessing Plaintiff's physical RFC and his or her opinion, thus, was based on incomplete information.

In concluding that Plaintiff could perform a significant range of medium work, the state agency physician stated that, although the EKGs revealed abnormal findings, there was no evidence of end organ damage.

---

[6]    The Consultation Request document dated June 26, 2003, states the following issue:

L/S WITH MODERATE DEGEN DISEASE AT L4-T.  SEVER DEGEN AT L5-S1, NL RT ANKLE.  EKG CLMT ABNL LT AXIS, DEVIATION, LEFT ANTERIOR FASCICULAR BLOCK, NON SPECIFIC[] T ABNL.  MSS BY EXAMINER TO MEDIUM - WHICH APPEARS A BIT MUCH W/X-RAY FINDINGS - PLS REVIEW[.]

(A.R. 159.)

10

(A.R. 152, 156.)  The ALJ expressly adopted this finding.  (A.R. 36 -- "There is no evidence of end organ damage.")  However, an EKG performed on March 9, 2004 (*i.e.,* eight months after the date of the state agency physician's opinion) indicated "probable LVH [left ventricular hypertrophy] with ST-T abnormalities." (A.R. 211.)  The ALJ had this evidence before him at the time of the hearing.  (A.R. 249.) Additionally, medical records from Harbor-UCLA Medical Center, dated June 28, 2004, note Plaintiff's symptoms of hypertension with left ventricular hypertrophy.  (A.R. 243.)  It appears that this evidence also was before the ALJ prior to the issuance of his written decision. (A.R. 240.)  These medical records suggest that Plaintiff may have end organ damage attributable to his hypertension and which may have further limited Plaintiff's ability to work.  The ALJ's unqualified adoption of the state agency physician's finding of "no evidence of end organ damage," notwithstanding the above-noted evidence possibly indicating otherwise, was improper,[7] and his reliance on the state agency's physician's finding is not supported by substantial evidence.

The ALJ's deferral to the state agency physician's opinion, which in turn adopted Dr. Singh's finding that Plaintiff's hypertension is "well controlled with medication" (A.R. 152, 157), also is not supported by substantial evidence.  The medical evidence of record before the ALJ indicated that Plaintiff's hypertension, a possible cause of ventricular hypertrophy, was not well-controlled.  (*See, e.g.,* A.R. 123 -- on

---

[7]   *See* <u>Vincent v. Heckler</u>, 739 F.2d 1393 1394-95 (9th Cir. 1984)(an ALJ need not discuss all evidence but must explain why "significant probative evidence has been rejected").

December 27, 2002, Dr. David J. Campisi, a consultative physician, measured Plaintiff's blood pressure at 155/90 and noted that his hypertension was "only partially controlled" with his current medication; A.R. 194 -- on May 1, 2003, the treating physician increased the dosage for Adalat and added Atenolol to the hypertension medication mix; A.R. 184 -- on October 17, 2003, the treating physician noted that Plaintiff had "suboptimal control" over his hypertension, and opined that his medication (*i.e.*, Atenolol) should be increased; A.R. 209 -- on March 9, 2004, the treating physician noted that Plaintiff's hypertension was "not well controlled," although he had complied with medication treatment for the past two months or weeks; A.R. 243 -- on June 28, 2004, the treating physician increased medication in order to "maximize BP [blood pressure] control.")

Given Dr. Singh's failure to address the clinical findings from the tests he ordered and the above-noted evidence concerning the possible effects of Plaintiff's hypertension (*i.e.*, probable left ventricular hypertrophy) and indicating that his hypertension was not controlled well, the record before the ALJ was inadequate to allow for a proper assessment of Plaintiff's physical RFC based solely on the state agency physician's opinion. Accordingly, the record should be further developed and clarified in these respects. *See* Mayes, 276 F.3d F.3d at 459-60; Tonapetyan, 242 F.3d at 1150. Such further development may include, *inter alia*: updated testing to confirm the extent of Plaintiff's hypertension and cardiac problem; and soliciting an updated opinion from Dr. Singh or another consultative physician that expressly considers the existing EKG results, as well as any additional test

results obtained, on Plaintiff's RFC.  *See* 20 C.F.R. §§ 404.1519k, 416.919k ("We may purchase medical examinations, including . . . X-rays and laboratory tests (including . . . electrocardiograms) from a medical source."); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (providing that consultative examinations are to be ordered when needed to properly assess a claimant's RFC).

For the foregoing reasons, the ALJ's reliance on the state agency physician's opinion as the basis for Plaintiff's physical RFC was reversible error, and the record must be developed in order to rectify the error.

**B.** **The ALJ Improperly Discounted Some Of Plaintiff's Subjective Symptom Testimony.**

Once a disability claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to cause some level of pain of the type which the claimant alleges, the claimant's subjective complaints regarding the severity of his pain and/or his symptoms may not be discredited based solely on a lack of objective medical evidence to corroborate the extent of the alleged pain and/or symptoms.  Smolen, 80 F.3d at 1281-84; Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989).  This rule is based on the recognition that pain is an inherently subjective phenomenon, which cannot be objectively verified or measured and varies significantly among individuals.  Bunnell, 947 F.2d at 347. Unless the evidence suggests affirmatively that Plaintiff is

malingering, the ALJ must provide clear and convincing reasons for rejecting Plaintiff's excess pain or symptom testimony.  <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).

Although the absence of objective medical findings to support the degree of pain cannot be the sole reason to reject subjective complaints, it has been recognized as one valid consideration.  *See* <u>Wainwright v. Sec'y. of Health & Human Servs.</u>, 939 F.2d 680, 682 (9th Cir. 1991).   Other factors that the ALJ may use to discredit a claimant's subjective complaints include:  (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, inconsistent statements concerning symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  <u>Smolen</u>, 80 F.3d at 1284; *see also* <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002)(listing factors, including:  (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains).

Plaintiff testified to having disabling physical impairments.  He alleged that he could no longer work because of tinnitus and headaches stemming from his high blood pressure, poor memory, left shoulder pain, and lower back pain.  (A.R. 252-54, 259 260.)  Plaintiff stated that he

14

could:  walk for "a couple [of] blocks" before having to rest; stand for
"not more than [an] hour or so"; sit for "about an hour or so" before
having to stand and move around; and lift 20 to 25 pounds once a day and
10 to 15 pounds off and on for about two to three hours a day.  (A.R.
259-60.)

     In discounting Plaintiff's subjective pain and symptom allegations,
the ALJ explained, in pertinent part:

         I have also considered [Plaintiff's] subjective complaints in
         making my determinations.  However, I cannot find greater
         limits or total disability based on [Plaintiff's] subjective
         complaints because they are not fully credible.  [Plaintiff's]
         subjective complaints and alleged limitations are out of
         proportion to the objective findings as noted above.

         [Plaintiff's]  subjective  complaints  and  alleged
         limitations are not consistent with the treatment he receives.
         [Plaintiff] had routine office visits for his physical
         complaints.  There are no inpatient hospitalizations or
         emergency room care.  He has not requested, and his treating
         doctors did not refer him[,] to the appropriate specialists
         for extensive work-up of his numerous physical complaints.
         There is no evidence of any physical therapy.  There is no
         evidence of treatment in 2004.  [Plaintiff] is only given
         medication for his subjective mental complaints.  He has not
         sought any mental health treatment for his alleged memory

problems, etc. It is reasonable to assume that if [Plaintiff] were experiencing the disabling problems alleged, he would have received more aggressive treatment, he would seek mental health treatment[,] and he would continue aggressive treatment.

[Plaintiff's] activities of daily living are out of proportion to his allegation of total disability. He told Dr. Singh that he has no problem dressing, grooming and bathing himself and he does laundry, makes his own bed, does dishes and takes a walk. He is able to take the bus by himself (Exhibit 6F). He told Dr. [Laja] Ibraheem he picks up trash for the probation department, swims, goes to the park and travels to Panama "about every year" (Exhibit 7F). [Plaintiff] reported on June 18, 2003 that he goes to the park and w[at]ches football games, he goes to get fast food[,] and he goes to the park and to church (Exhibit 9E).

Finally, I do not find [Plaintiff's] subjective allegations credible, in part because, despite [being] given an opportunity to present additional evidence, [Plaintiff] has provided no specific support for his claims of stroke or head trauma with metal in his head. The CT results are consistent with some injury, but clinically [Plaintiff] has shown no disabling impairment. [Plaintiff] complains of back pain, but testified to having no treatment for it. Nor is there support for other orthopedic complaints, including [Plaintiff's] right

16

wrist, right knee or left shoulder pain first raised at the
hearing.

(A.R. 36-37.)

Plaintiff alleges that the ALJ improperly discounted Plaintiff's
subjective pain and symptom allegations, because he failed to specify
adequately *which* allegations of pain or other symptoms he found to be
not credible.

The ALJ properly discredited Plaintiff's allegations of back pain
by noting Plaintiff's testimony that he did not receive any treatment
for the condition. (A.R. 37.) While x-rays of Plaintiff's lumbar spine
taken on June 12, 2003, reveal that Plaintiff had moderate degenerative
disease at L4-5 and severe degenerative disease at L5-S1 (A.R. 145), the
treatment notes spanning from May 1, 2003, through June 28, 2004, show
that Plaintiff complained of lower back pain only once, on May 1, 2003.
(A.R.176-214, 243-46, *see* 194).   No treatment was recommended on that
date or anytime thereafter.   (*Id.*)   Plaintiff's failure to receive
treatment for back pain, despite undergoing treatment for other
impairments of which he complains   (*e.g.*, hypertension and anxiety),
suggests that Plaintiff may have been exaggerating the severity of his
back pain.   *See* <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir.
2005)(holding that the ALJ properly discredited the claimant's pain
testimony where the pain was not severe enough to motivate her to seek
consistent treatment); <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir.
1999)(the ALJ properly considered, as a part of his credibility

evaluation, the treating physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the level of pain alleged). This was a "clear and convincing" reason for rejecting Plaintiff's testimony about the effect of his claimed back pain.

The ALJ also properly noted that there was no support for Plaintiff's complaints of pain in his right wrist, right knee, and left shoulder. (A.R. 37.) The consultative examination administered by Dr. Singh revealed a normal range of motion and no musculoskeletal abnormality in Plaintiff's right wrist, right knee, and left shoulder. (A.R. 139.) Moreover, the treatment notes are bereft of any evidence indicating that Plaintiff seriously complained of, or received treatment for, pain in those areas. In fact, the only scintilla of evidence concerning these ailments in the treatment notes pertains to a single complaint of left shoulder pain made by Plaintiff in an Adult Outpatient Questionnaire Form. (A.R. 212.) As Plaintiff has failed to provide objective medical evidence of underlying impairments in his right wrist, right knee, and left shoulder, the ALJ properly rejected Plaintiff's pain allegations in this respect. *See* Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001)(the ALJ's citation of lack of medical evidence of disuse muscle atrophy was a clear and convincing reason, among others, for discrediting the claimant's excessive symptom testimony).

Although the ALJ provided several clear and convincing reasons for disregarding the above subjective pain/symptom allegations, his other

stated reasons were not legally sufficient.  The ALJ's across-the-board rejection of Plaintiff's remaining subjective complaints for being "not consistent with the treatment he receive[d]" -- namely, because Plaintiff was not hospitalized, did not receive emergency room care, and did not receive psychological counseling, physical therapy, treatment by specialists, or treatment in 2004 (A.R. 36) -- fails for several reasons.

The record contained evidence that Plaintiff *did* receive medical treatment in 2004 (A.R. 208-09, 211, 243-46); the ALJ's statement to the contrary is plainly erroneous.  Moreover, Plaintiff consistently complained of, and received treatment and medication for, his hypertension (and related symptoms) and anxiety.  (*See, e.g.*, A.R. 176, 184, 187, 190, 193-94, 209-10, 243.)  The ALJ's failure to differentiate among Plaintiff's subjective symptoms in finding, in a broadbrush manner, a lack of treatment and complaints, thus, was improper.  *See* Smolen, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").  Rejecting all of Plaintiff's "subjective complaints and alleged limitations" generically, based on an asserted lack of treatment, failed to meet the "clear and convincing" standard required for discounting Plaintiff's complaints.  Moreover, nothing in the record supports the ALJ's conclusion that, because Plaintiff was not hospitalized and did not receive emergency room treatment, his claimed symptoms should be disregarded.

The ALJ also improperly discounted Plaintiff's mental impairment

19

allegations by citing the lack of "mental health treatment for his alleged memory problems, etc." (A.R. 36.)  As noted by the ALJ, Plaintiff was provided psychiatric medication (*e.g.,* Elavil and Prozac) for reported anxiety, but he did not receive psychological counseling. (*See, e.g.,* A.R. 184, 190, 193-94, 206.)  Plaintiff's failure to seek psychological counseling, however, was not a "clear and convincing" reason for discrediting Plaintiff's allegations.  The ALJ found that Plaintiff had a "severe" depressive disorder, among other "severe" mental impairments.  As the Ninth Circuit observed in <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1465 (9th Cir. 1996), those afflicted with depression "often do not realize that their condition reflects a potentially serious mental illness."  "As the Sixth Circuit has noted in finding invalid an ALJ's reasons for rejecting claimant's assertions about his depression, '[a]ppellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'"  *Id.* (quoting <u>Blankenship v. Bowen</u>, 874 F.2d 1116, 1124 (6th Cir. 1989)).

In addition, the ALJ erred in concluding that Plaintiff's activities of daily living were inconsistent with his subjective allegations.  (A.R. 37.)  These activities (*e.g.,* dressing, grooming, bathing, doing laundry, making his bed, doing dishes, taking a walk, riding a bus, swimming, and travel to Panama "about every year") did not consume a substantial part of Plaintiff's day and, thus, were not

20

reflective of Plaintiff's ability to sustain gainful employment.[8]  *See*
Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990)(daily
activities may not be relied upon to support an adverse credibility
decision where those activities do not affect the claimant's ability to
perform appropriate work activities on an ongoing and daily basis);
Fair, 885 F.2d at 603 (noting that a claimant is not required to be
"utterly incapacitated" in order to be disabled and that "many home
activities are not easily transferable to what may be the more grueling
environment of the workplace").

In particular, although Plaintiff admitted to washing cars and
picking up trash for 40 days, these activities did not clearly indicate
that Plaintiff would be able to sustain gainful employment.  This work
was a part of his probation requirements stemming from a conviction for
driving under the influence.  (A.R. 251-52.)  It is unclear how many
hours Plaintiff worked each day and whether other, less strenuous,
alternatives were provided to fulfill his probation requirements.  Had
Plaintiff been required to perform these activities or risk jail time,
it would have been reasonable for Plaintiff to perform the work despite
disabling impairments.  Hence, this was not a "clear and convincing"
reason for rejecting Plaintiff's subjective allegations.

Plaintiff's failure to provide "support for his claims of a stroke
or head trauma with metal in his head" was similarly not a "clear and
convincing" reason for discrediting Plaintiff's pain testimony.  (A.R.

---

[8]   Plaintiff testified that he swam twice per week but stopped,
after experiencing pain in his right eye.  (A.R. 256.)

37.)    The ALJ failed to explain how Plaintiff's abstention from providing past medical records about matters not claimed to constitute impairments reflects negatively upon his credibility.    Moreover, although Plaintiff asserted in the Disability Report that he suffered from a stroke in March 1999, and multiple fractures in his head, he did not testify, at the hearing, that the residual effects of his alleged stroke or head trauma impaired his ability to work.[9]  (A.R. 94.)  Thus, Plaintiff was not required to provide medical evidence to support such testimony.    Accordingly, Plaintiff's failure to provide support for these alleged impairments did not reflect negatively on Plaintiff's credibility.

The ALJ also erred in finding that the CT results were consistent with some injury but that "clinically," Plaintiff "has shown no disabling impairment."  (A.R. 37.)   The CT examination conducted on April 17, 2003, revealed "chronic ischemic deep white matter microangiopathic changes [*i.e.*, disease of the small blood vessels]." (A.R. 213.)    Although no physician explicitly interpreted the significance of this finding, medical records dated March 9, 2004, suggest that the microangiopathic changes may have been the cause of Plaintiff's migraine and hearing problem.[10]   (A.R. 209.)   In view of

---

[9]    Rather, Plaintiff testified that his impairments consisted of left shoulder pain, lower back pain, hypertension, memory problems, headaches, and tinnitus.  (A.R. 252-54, 260.)

[10]    Plaintiff testified that the headaches arising from his hypertension were one of the impairments that prevented him from returning to work.  (A.R. 252-53.)  In addition, he asserted that his hypertension caused tinnitus, which consequently caused the headaches. (A.R. 252-53.)  However, the record does not clearly indicate the cause of the headaches and tinnitus.  Treatment records dated July 24, 2003,

22

Plaintiff's testimony that his headaches and tinnitus prevented him from working, before concluding that Plaintiff was not credible because he "ha[d] shown no disabling impairment," the ALJ, at a minimum, should have further developed the record by requesting the treating physician or a medical expert to interpret the significance of the microangiopathic changes on Plaintiff's limitations. *See* Mayes, 276 F.3d at 459-60 (noting the ALJ's duty to develop the record further when the record is inadequate to allow for proper evaluation of the evidence.). Only thereafter could the ALJ properly assess the extent of the limitations, if any, caused by the microangiopathic changes. *See* Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)(an ALJ is forbidden from making his own medical assessment beyond that demonstrated by the record).

Although the ALJ provided some adequate reasons for discounting portions of Plaintiff's subjective pain/symptom complaints, many of the ALJ's reasons were not sufficient, as described above. On this record, the Court cannot say that the ALJ's rejection of Plaintiff's subjective symptom testimony, as a whole, met the required standard and was supported by substantial evidence. Thus, the ALJ's conclusion -- that Plaintiff's claim of pain and subjective symptoms was not credible *in*

---

indicate that the headaches/migraines were likely secondary to the hypertension. (A.R. 190.) However, treatment records dated March 9, 2004, appear to indicate that microangiopathic changes in Plaintiff's brain may be the cause of the migraines and tinnitus. (A.R. 209.) Moreover, treatment records dated October 17, 2003, indicate that Plaintiff's tinnitus was an unlikely consequence of hypertension, given the continued presence of the condition with fair blood pressure control. (A.R. 184.) Furthermore, tinnitus was noted as an atypical sensation preceding a migraine attack. (*Id.*)

23

1    *toto* and therefore should be rejected -- constitutes error.  This error
2    warrants a remand for further consideration and clarification.

3

4    **C.   Remand Is Required.**

5

6         The decision whether to remand for further proceedings or order an
7    immediate award of benefits is within the district court's discretion.
8    Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no
9    useful purpose would be served by further administrative proceedings, or
10   where the record has been fully developed, it is appropriate to exercise
11   this discretion to direct an immediate award of benefits.  *Id.* at 1179
12   ("the decision of whether to remand for further proceedings turns upon
13   the likely utility of such proceedings").  However, where there are
14   outstanding issues that must be resolved before a determination of
15   disability can be made, and it is not clear from the record that the ALJ
16   would be required to find the claimant disabled if all the evidence were
17   properly evaluated, remand is appropriate.  *Id.*

18

19        Here, there are outstanding issues to be resolved and errors which
20   may be rectified, as discussed above.  Accordingly, remand is the
21   appropriate remedy to allow the ALJ the opportunity to remedy the above-
22   mentioned deficiencies and errors.  *See, e.g.,* Benecke v. Barnhart, 379
23   F.3d 587, 593 (9th Cir. 2004)(where ALJ erred by discounting treating
24   physicians' opinions, remand for further proceedings is appropriate if
25   enhancement of the record would be useful); Higbee v. Sullivan, 975 F.2d
26   558, 561-62 (9th Cir. 1992)(remanding case in order to develop the
27   record); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir.
28

                                        24

1989)(remand appropriate to remedy defects in the record).

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 20, 2007.

                                        /s/
                              MARGARET A. NAGLE
                    UNITED STATES MAGISTRATE JUDGE